**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

INTERNATIONAL UNION OF
OPERATING ENGINEER LOCAL 501,
AFL-CIO,

*Petitioner*,

v.

NATIONAL LABOR RELATIONS
BOARD,

*Respondent*,

STATION GVR ACQUISITION, LLC,
d/b/a Green Valley Ranch Resort
Spa Casino,

*Respondent-Intervenor.*

No. 18-71124

NLRB No.
28-CA-214925

| STATION GVR ACQUISITION, LLC, DBA Green Valley Ranch Resort Spa Casino, *Petitioner*, | No. 18-72079 NLRB No. 28-CA-214925 |
| --- | --- |
| v. | |
| NATIONAL LABOR RELATIONS BOARD, *Respondent.* | |

| NATIONAL LABOR RELATIONS BOARD, *Petitioner*, | No. 18-72121 NLRB No. 28-CA-214925 |
| --- | --- |
| v. | |
| STATION GVR ACQUISITION, LLC, DBA Green Valley Ranch Resort Spa Casino, *Respondent.* | OPINION |

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted December 3, 2019
San Francisco, California

Filed February 7, 2020

Before: Eugene E. Siler,[*] Richard R. Clifton,
and Jay S. Bybee, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[**]

### Labor Law

The panel denied Station GVR Acquisition, LLC, and International Union of Operating Engineers Local 501, AFL-CIO's petitions for review, and granted the National Labor Relations Board's cross-application for enforcement of the Board's order holding that slot technicians were not "guards" under section 9(b)(3) of the National Labor Relations Act (the "Act").

Station GVR owned and operated a hotel and casino in Henderson, Nevada, and it employed slot technicians whose primary responsibilities included installing, repairing, and maintaining gaming machines. The Union filed a petition with the Board to represent GVR's slot technicians. The Board certified Local 501 as the slot technicians' bargaining representative, concluding that the slot technicians were not guards. When GVR refused to recognize and bargain with the Union, the Board found that GVR engaged in unfair labor

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

practices within the meaning of the Act and ordered various remedies.

The Act prohibits a union from representing a guard unit if it also represents non-guard employees. Because it was undisputed that the Union represented non-guard employees at the casino, the panel's inquiry focused on whether a slot technician was employed as a guard.

The panel agreed with the Board's determination that the casino's slot technicians were not guards under the statute. The panel held that the slot technicians' duties differed in fundamental respects from those of the surveillance technicians in *Bellagio, LLC v. NLRB*, 863 F.3d 839 (D.C. Cir. 2017). The panel rejected GVR's argument that the slot technicians were guards because they enforced GVR's rules and policies against GVR's guests and other employees.

The Union sought review of the Board's decision not to impose an affirmative remedy ordering GVR to provide certain information that it had previously requested. The panel held that the Union did not have standing to bring this petition because the Board granted it all of the relief that it had specifically sought in the charge and complaint, and therefore, the Union was not a "person aggrieved" within the meaning of 29 U.S.C. § 160(f).

### COUNSEL

David A. Rosenfeld (argued) and Thomas I.M. Gottheil, Weinberg Roger & Rosenfeld, Alameda, California, for Petitioner International Union of Operating Engineer Local 501, AFL-CIO.

Stanley J. Panikowski (argued), San Diego, California, for Respondent-Intervenor, Petitioner, and Respondent Station GVR Acquisition, LLC.

Heather S. Beard (argued), Washington, D.C., for Respondent and Petitioner National Labor Relations Board.

## OPINION

CLIFTON, Circuit Judge:

Station GVR Acquisition, LLC ("GVR") owns and operates a hotel and casino in Henderson, Nevada, known as Green Valley Ranch Resort. The casino has approximately 2300 gaming machines, including video slot machines, video reel machines, machines that use a combination of both reel and video components, and strictly reel machines. Many of these machines rely on modern electronics and computer-based technology. The casino employs thirteen slot technicians whose primary responsibilities include installing, repairing, and maintaining the gaming machines.

This case raises the question of whether the slot technicians are "guards" under section 9(b)(3) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 159(b)(3). Under the Act, the National Labor Relations Board ("NLRB" or the "Board") cannot certify a union to represent "guards," as that term is used in the statute, if that union also represents non-guard employees.[1]

---

[1] Section 9(b)(3), 29 U.S.C. § 159(b)(3), states that:

    [T]he Board shall not . . . (3) decide that any unit is

There are three separate petitions before us. *First*, GVR petitions for review of the NLRB's decision certifying the International Union of Operating Engineers Local 501, AFL-CIO ("Local 501" or the "Union") as the slot technicians' bargaining representative, based on the NLRB's determination that the slot technicians are not guards. *Second*, the NLRB seeks enforcement of its order requiring GVR to bargain with the Union. *Third*, the Union petitions for review of the NLRB's decision not to order an affirmative remedy requiring GVR to provide the Union with certain information that it had requested in a letter to the company. We agree with the NLRB that the slot technicians are not guards under the statute. We therefore deny GVR's petition and grant the cross-application of the NLRB to enforce its order. We also deny the Union's petition.

## I.  Background

In August 2017, the Union filed a petition with the Board to represent GVR's slot technicians. The slot technicians thereafter voted unanimously in favor of Local 501 serving as their bargaining representative. GVR filed objections to the representation. It argued that the slot technicians were

---

> appropriate for [collective bargaining] if it includes, together with other employees, any individual employed as a guard to enforce against employees and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises; but no labor organization shall be certified as the representative of employees in a bargaining unit of guards if such organization admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, employees other than guards.

guards, and that because Local 501 represented other non-guard employees at the casino, it could not serve as the bargaining representative of the slot technicians. The NLRB Regional Director overruled GVR's objections and certified Local 501 as the slot technicians' bargaining representative, concluding that the slot technicians were not guards. The NLRB later denied GVR's request for review of that determination.

Shortly after the Union was certified, it sent a letter to GVR including a demand for bargaining and a request to be provided with certain categories of information. GVR responded that it would not commence collective bargaining or produce information, and has since refused to recognize and bargain with the Union. The NLRB thereafter found that GVR engaged in unfair labor practices within the meaning of the Act and ordered various remedies.

## II. Discussion

"This court upholds decisions of the NLRB 'if its findings of fact are supported by substantial evidence and if the Board correctly applied the law,' and defers to any 'reasonably defensible' interpretation of [the Act]." *Retlaw Broad. Co. v. NLRB*, 53 F.3d 1002, 1005 (9th Cir. 1995) (quoting *NLRB v. Gen. Truck Drivers, Local No. 315*, 20 F.3d 1017, 1021 (9th Cir.), *cert. denied*, 513 U.S. 946 (1994)).

### A. Guards Under the Statute

The Act's prohibition on a union representing a guard unit if it also represents non-guard employees is intended "to minimize the danger of divided loyalty that arises when a guard is called upon to enforce the rules of his employer

against a fellow union member." *Drivers, Chauffeurs, Warehousemen & Helpers, Local 71 v. NLRB*, 553 F.2d 1368, 1373 (D.C. Cir. 1977); *see also Wells Fargo Alarm Servs. v. NLRB*, 533 F.2d 121, 125 (3d Cir. 1976) ("[T]he Board's inquiry must focus on whether the potential conflict in loyalties which concerned Congress is present.").

> In enacting this section of the Act, Congress sought to prevent the conflict of interests that might arise among an employer's guard employees when, during a strike by a unit of nonguard employees represented by the same union that represents the employer's guards, the guards are called upon to enforce the employer's security rules against their striking colleagues.

*Boeing Co*., 328 N.L.R.B. 128, 130 (1999).

Because it is undisputed that the Union represents non-guard employees at the casino, our inquiry focuses on whether a slot technician is an "individual employed as a guard to enforce against employees and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises." 29 U.S.C. § 159(b)(3); *see Bellagio, LLC v. NLRB*, 863 F.3d 839, 847–48 (D.C. Cir. 2017).

### B.  Slot Technicians

In defending its conclusion that the slot technicians are not guards, the Board points to its decision in *Boeing Co*., where it described the customary responsibilities of guards:

> Guard responsibilities include those typically associated with traditional police and plant security functions, such as the enforcement of rules directed at other employees; the possession of authority to compel compliance with those rules; training in security procedures; weapons training and possession; participation in security rounds or patrols; the monitor and control of access to the employer's premises; and wearing guard-type uniforms or displaying other indicia of guard status.

328 N.L.R.B. at 130. Recognizing that employees might have different responsibilities, some related to security and some not, the Board concluded that employees are guards under the Act "if they are charged with guard responsibilities that are not a minor or incidental part of their overall responsibilities." *Id.*

In the context of this case, the Board argues that the casino's slot technicians do not perform any of the traditional guard responsibilities identified in *Boeing*. On the contrary, it characterizes the slot technicians, as their title implies, as technicians who install, maintain, and repair the slot machines, and contend that these duties differ fundamentally from those of guards.

GVR argues that the Board takes too narrow a view of what constitutes a guard. It asserts that *Boeing*'s holding that only persons who perform traditional police-like functions are guards is "flawed" and inconsistent with the plain language of the statute, as well as other Board and appellate-court precedent. GVR further contends that "a core function of the

slot technician's duties is to enforce rules against casino guests and other employees to protect GVR's property and assets," including by "verifying jackpots against fraudulent payouts."  It alleges that the slot technicians are trained and instructed to combat the true dangers facing casinos "in the modern context," including "unscrupulous individuals who try to take advantage of all aspects of the employer's slot machine operation, ranging from the initial bill validation, to fraudulent payouts and tampering, to claims of lost credits, to fraudulent 'EZ-Pay' tickets."

GVR relies principally on the decision of the D.C. Circuit in *Bellagio*, where the court held that the Board improperly determined that a casino's surveillance technicians were not guards.  863 F.3d at 852.  The *Bellagio* court described several aspects of those employees' responsibilities, including that they: (1) design, install, and maintain the surveillance department's gaming-floor camera system; (2) "oversee the server room and are solely responsible for the elaborate computer system that manages basically every aspect of [] digital surveillance, including not only the surveillance department's cameras but the security department's as well"; (3) "train the operators and officers on how to use the computers, change camera views and archive video files"; and (4) "maintain each casino's electronic access system." *Id.* at 842–43 (internal quotation marks and citations omitted).    The court noted also that, "perhaps most importantly for our purpose, techs often participate in targeted investigations of fellow employees suspected of wrongdoing."  *Id.* at 844.

*Bellagio* concluded that the casino surveillance technicians were guards under the statute because the evidence "[t]aken as a whole . . . demonstrates that the techs

perform an essential step in the [] enforcement of rules to protect the casinos' property and patrons, including enforcement against their fellow employees." *Id.* at 849 (internal quotation marks omitted). It noted that the Board's contrary determination overlooked, among other things: (1) "that the surveillance operators and security officers in the monitor rooms cannot properly do their jobs without the techs"; (2) the context of "ultramodern luxury casinos" with sophisticated networks "protect[ing] high-end jewelry, priceless art, stockpiles of cash and the personal safety of revelrous guests who are not always vigilant regarding their own wellbeing"; (3) that "techs can control what surveillance operators and security officers see in the monitor rooms"; and (4) the "crucial fact that the techs help enforce rules against their *coworkers*, most obviously during special operations." *Id.* at 850–52 (emphasis in original).

We agree with the Board's determination that the casino's slot technicians are not guards under the statute. Their duties differ in fundamental respects from those of the surveillance technicians in *Bellagio*. There, the surveillance technicians were responsible for the system that managed "basically every aspect of [] digital surveillance," including the cameras used by both the security and surveillance departments. *Id.* at 843. Moreover, the surveillance technicians "control[led] access to all sensitive areas of each casino and ha[d] access to all areas themselves; . . . maintain[ed] alarm systems for the most valuable property in each casino; and . . . help[ed] spy on fellow employees suspected of misconduct." *Id.* at 849. Indeed, with respect to helping enforce rules against coworkers, the court found that "[t]he tech's duties in a special operation squarely implicate section 9(b)(3)'s aim of minimizing the danger of divided loyalty that arises when a guard is called upon to enforce the rules of his employer

against a fellow union member." *Id.* at 852 (internal quotation marks omitted).

By contrast, the slot technicians are not responsible for any systems relied upon by the surveillance and security departments to carry out their core functions. Slot technicians' interactions with those departments are limited to verifying that machines are operating properly and helping to determine the validity of potentially fraudulent claims of faulty payouts on gaming machines. Unlike the surveillance technicians who controlled the access—and themselves had access—to all sensitive areas of the casino, slot technicians are not permitted to enter the surveillance room without permission and do not control access to sensitive spaces in the casino. Rather, the slot technicians spend 90% of their time on the gaming floor, primarily installing, maintaining, and repairing the machines.

Most importantly, while the surveillance technicians in *Bellagio* helped "spy on fellow employees suspected of misconduct," *id.* at 849, and engaged in special operations against other employees, which the court found "squarely implicat[ed]" section 9(b)(3)'s aim of minimizing the danger of divided loyalty, *id.* at 852, slot technicians do not engage in sting operations to detect malfeasance against employees or customers. Indeed, they have no involvement in the investigation of other employees except to the extent that an inspection of a gaming machine might be required. They likewise have no obligation to report employee misconduct beyond that of other employees. The animating purpose of minimizing divided loyalty between guards and non-guard employees is not implicated by this representation.

GVR argues that the slot technicians are guards because they "enforce GVR's rules and policies against GVR's guests and other employees in order to protect GVR's property and assets." This distended interpretation of guard status would swallow the definition outright. For example, GVR contends that the slot technicians "[e]nforce GVR's rules and policies against underage gaming and underage drinking, which protects GVR against both legal liability and the potential loss of its gaming license," and also enforce "GVR's anti-money laundering rules." But the Board found that all of the employees who work on the gaming floor, including slot technicians, are required to be on the lookout for malfeasance such as underage drinking and gambling and money laundering. These employees report any prohibited activity to security personnel. Critically, the duties of the slot technicians to detect and report malfeasance at the casino extends no further than other employees who work on the gaming floor.

Under GVR's proffered interpretation of guard status, we struggle to think of any casino employee who would not fit the bill. Bartenders surely enforce GVR's rules against underage drinking when they check a patron's ID before serving alcohol. Likewise, table dealers enforce rules to protect the property of the casino when they exchange chips only for the amount of cash received from a prospective player and look to see that players are not pocketing extra chips. Just as the slot technicians' duties include reporting prohibited activity to security, the bartenders and dealers are to do the same if they detect a patron presenting fake identification or stealing chips. We decline to adopt an interpretation of the Act that would characterize virtually all employees working on the casino floor as guards.

*C.  The Union's Petition*

Finally, the Union seeks review of the Board's decision not to impose an affirmative remedy ordering GVR to provide certain information that it had previously requested in a letter to the company.  The Union does not deny that the Board granted it all of the relief that it had specifically sought in the charge form and complaint.  It therefore does not have standing to bring this petition, as it is not a "person aggrieved" within the meaning of 29 U.S.C. § 160(f).[2]

## III.  Conclusion

The Board reasonably determined that the slot technicians are not guards under section 9(b)(3) of the Act.  The Board likewise did not err in failing to provide the Union with an affirmative remedy that it had not sought.  The petition for review filed by GVR is **DENIED**, the petition for review filed by the Union is also **DENIED** and the Board's cross-application for enforcement of its order against GVR is **GRANTED**.

---

[2] 29 U.S.C. § 160(f) provides, in relevant part:

Any person aggrieved by a final order of the Board granting or denying in whole or in part *the relief sought* may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged . . . (emphasis added).